## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JOE B. PARTAIN, ET AL,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-10-2580** |
| | § | |
| **MID-CONTINENT SPECIALTY** | § | |
| **INSURANCE SERVICES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's Motion to Dismiss (Doc. No. 97), Defendant's Motion for Summary Judgment (Doc. No. 101), and Plaintiffs' Motion for Summary Judgment (Doc. No. 100). After considering the pending motions, all responses thereto, and the applicable law, the Court finds that Defendant's Motion to Dismiss must be GRANTED IN PART and DENIED IN PART. Defendant's Motion for Summary Judgment must be GRANTED IN PART.

### I.       BACKGROUND

#### A.  The Underlying Suit

This case arises out of a separate civil action brought by Kipp Flores Architects LLC ("KFA"). In 2009, KFA filed a copyright infringement suit (hereinafter the "KFA Suit" or the "Underlying Suit") in the Southern District of Texas against Hallmark Collection of Homes LLC, Hallmark Design Homes L.P. (collectively, "Hallmark"), and Plaintiff Joe Partain (an individual partner in Hallmark). *Kipp Flores Architects LLC v. Hallmark Designs Homes, L.P. et al*, Case. No. 4:09-cv-00850. In November 2009,

1

Hallmark filed bankruptcy, but the KFA Suit proceeded as to Mr. Partain. On April 29, 2010, KFA added Laura Partain and William Graper as defendants in the suit.

KFA's Second Amended Complaint asserts that KFA creates and markets architectural designs, and that it owns copyrights protecting those designs. (Doc. No. 58 at 3-5.) The Complaint refers to KFA's designs collectively as the "Copyrighted Works." KFA alleges that Joe Partain, Laura Partain, and William Graper (collectively, the "Plaintiffs") obtained copies of the Copyrighted Works, and that they infringed upon these works by: (1) making paper and digital drawings and plans based on the Copyrighted Works; (2) constructing structures based on the Copyrighted Works; (3) selling and offering for sale structures based on the Copyrighted Works without authority from KFA; (4) creating, publishing, and using non-pictorial depictions of structures based on the Copyrighted Works in promotional and advertising materials; and (5) publishing and using the infringing materials in the course of advertising their infringing structures. (*Id.* at 5-6.) KFA alleges that, in November 2008, KFA demanded that defendants cease and desist from further acts of copyright infringement, but that the defendants have refused to do so and continue to violate KFA's rights. (*Id.* at 6.) KFA seeks as damages lost profits and any profits resulting from the alleged infringement or, alternatively, an award of statutory damages. (*Id.* at 8.) KFA also seeks injunctive relief and attorneys' fees. (*Id.*)

### B.  Mid-Continent's Insurance Policy Terms and Reservation of Rights

#### 1.  Insurance Policy Terms

Defendant Mid-Continent provides general liability insurance to Hallmark. On December 31, 2009, attorneys Adair & Myers, acting on behalf of Mr. Partain, notified Mid-Continent of the KFA Suit and requested that Mid-Continent engage Adair & Myers

to represent Mr. Partain in that suit. (Doc. No. 95, Plaintiffs' Fourth Amended Complaint ("Pl. Compl."), Ex. 2.) On January 25, 2010, Mid-Continent responded to this notification by offering a defense, subject to a reservation of rights. (Pl. Compl., Ex. 7.) In its reservation of rights, Mid-Continent informed Mr. Partain that it had retained the law firm of Cooper & Scully to defend him. After KFA added Ms. Partain and Mr. Graper as defendants in the Underlying Suit, these two Plaintiffs notified Mid-Continent of the suit, and also requested that Mid-Continent engage Adair & Myers to defend them. Mid-Continent again tendered the defense subject to a reservation of rights, and again indicated that Cooper & Scully had been retained to defend all Plaintiffs the KFA Lawsuit. (Doc. No. 100, Ex. A8.)

The terms of the relevant insurance policies include "Coverage A," relating to "Bodily Injury and Property Damage," and "Coverage B," relating to "Personal and Advertising Injury Liability." The KFA Lawsuit implicates Coverage B. The insuring agreement under this coverage provides as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . . .
>
> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(*See, e.g.*, Doc. No. 101, Ex. 1, "Mid-Continent Policy No. 04-GL-000717323, effective May 28, 2008 to January 20, 2009, at 17.)

The policies define "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of," among other things, "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (*Id.* at 25-26.)

3

"Advertisement" is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (*Id.* at 24.) "Notices that are published include material placed on the internet or on similar electronic means of communication." (*Id.*) According to these terms, the policies afford coverage for copyright infringement only in the context of the insured's advertisement.

The policies also contain specific exclusions that limit coverage, including the following exclusions that may be pertinent to the KFA Suit: Exclusion 2(a) includes denies coverage of a "knowing violation of rights of another," and indicates that "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (*Id.* at 17.) Exclusion 2(c) denies coverage for "'personal and advertising injury' arising out of oral or written publication of material that took place before the beginning of the policy period." (*Id.* at 18.) Exclusion 2(e) denies coverage for "'personal and advertising injury' for which the insured has assumed liability in a contract or agreement," except any liability for damages that the insured would have in the absence of the contract or agreement. (*Id.*) Exclusion 2(f) denies coverage for "'personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'" (*Id.*) Finally, exclusion 2(i) denies coverage for "'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (*Id.*) Exclusion 2(i) does not apply to copyright infringement in the insured's "advertisement." (*Id.*)

### 2.  Reservation of Rights

In its reservation of rights,[1] Mid-Continent informs Plaintiffs that the above policy exclusions preclude or limit coverage under the policies. (Doc. No. 100, Ex. A8.) Mid-Continent also reserves the right to deny coverage in the event the alleged injury did not occur within the policy period, or in the event Mr. Partain does not qualify as an insured under the policies. (*Id.*) Finally, the reservation of rights gives notice of potential non-coverage based on the fact that the insureds failed to provide timely notice of KFA's initial claim in July 2008, and of the KFA Lawsuit filed on March 24, 2009. (*Id.*)

After receiving Mid-Continent's first reservation of rights, Mr. Partain responded (via Adair & Myers) that Mid-Continent's reservation of rights creates a conflict of interest that allows him to select his own, independent counsel. (Doc. No. 102, Ex. A12.) Mid-Continent denied Mr. Partain's request to select counsel on the ground that no disqualifying conflict existed. (Doc. No. 102, Ex. A13.) Mr. Partain then asked Mid-Continent to provide, in seven days, "the legal and factual basis" for its position that there was no conflict of interest. (Doc. No. 102, Ex. A14.) Mid-Continent responded, in sixteen days, that there was no conflict of interest because Mid-Continent's chosen counsel could not control the outcome of the coverage issues. (Doc. No. 101, Ex. A15.) Mid-Continent also indicated that its refusal to pay Adair & Myers should not be construed as a rejection of its duty to defend. (*Id.*) Mid-Continent's position is the same as to Ms. Partain and Mr. Graper.

### C.  Plaintiffs' Claims

---

[1] As discussed above, Mid-Continent sent two reservation of rights letters: the first was sent to Mr. Partain, and the second was sent to all three Plaintiffs after KFA added Ms. Partain and Mr. Graper as defendants in the Underlying Suit. Hereinafter, references to Mid-Continent's "reservation of rights" will refer to the second reservation of rights letter, applicable to all three Plaintiffs; references to Mid-Continents "first reservation of rights" will refer to its first letter, applicable only to Mr. Partain.

Plaintiffs filed this suit in state court alleging that a conflict of interest exists between Plaintiffs and Mid-Continent, giving Plaintiffs the right to select independent counsel to represent them in the Underlying Suit. Because Mid-Continent has refused to pay for Plaintiffs' chosen counsel, Plaintiffs allege that Mid-Continent has breached its contractual duty to defend. Mid-Continent removed the case to this Court. In their Fourth Amended Complaint (the "Complaint") (Doc. No. 95), Plaintiffs bring suit under the Texas Declaratory Judgment Act seeking a declaratory judgment that there is a conflict of interest giving rise to Plaintiffs' authority to select their own counsel. They also allege breach of contract and violations of the Texas Insurance Code (the "Insurance Code") and the Texas Deceptive Trade Practices Act ("DTPA").

Joe B. Partain and Laura Partain filed personal bankruptcy on February 4, 2011; this case was stayed until April 28, 2011, when the parties jointly agreed to lift the stay to proceed. On September 7, 2011, Ben Floyd, as Trustee, was substituted in for Plaintiffs Joe B. Partain and Laura Partain.

### D.  Mid-Continent's Defenses

Mid-Continent asserts that no disqualifying contract exists, and that it therefore fulfilled its duty to defend Plaintiffs in the Underlying Suit by offering its chosen counsel, Cooper & Scully, to defend Plaintiffs subject to a reservation of rights. Mid-Continent also argues that Plaintiffs breached the insurance contract and failed to comply with conditions precedent to coverage by failing to provide information necessary for Mid-Continent to tender a defense. Mid-Continent has moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 97); both the Plaintiffs and Mid-Continent have moved for summary judgment (Doc. Nos. 100 and 101, respectively).

## II.    MOTION TO DISMISS

### A.  Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), a defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, No. 05-30976, 2006 WL 2870972, at *2 (5th Cir. Oct. 9, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1203 (3d ed. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set

forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950. The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Allegations of fraud must meet the stricter standards of Federal Rule of Civil Procedure 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "'At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). The Fifth Circuit has explained that "Rule 9(b) requires 'the who, what, when, where, and how' [of the alleged fraud] to be laid out." *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). A claim that a fraud allegation is insufficiently particular under Rule 9(b) is properly raised by a Rule

12(b)(6) motion for dismissal for failure to state a claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 n. 8 (5th Cir. 2009); *Carter v. Nationwide Property and Cas. Ins. Co.*, 2011 WL 2193385, at *1 (S.D. Tex. June 6, 2011).

Rule 9(b)'s particularity requirement is "supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring enough facts [taken as true] to state a claim to relief that is plausible on its face." *Id.* at 185 (quotations and footnote omitted). Thus Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186 (internal quotations omitted).

### B.  Analysis

Mid-Continent moves to dismiss Plaintiffs' claims under the Insurance Code and the DTPA, as well as Plaintiffs' request for declaratory judgment.

#### 1.  Violations of the Insurance Code

Mid-Continent moves to dismiss Plaintiffs' claims for violations of Chapters 541 and 542 of the Insurance Code.

##### a.  Claims under Chapter 541 of the Insurance Code

###### i.  Section 541.051

Plaintiffs allege that Mid-Continent violated Section 541.051 of the Insurance Code. Section 541.051 provides, in relevant part:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:
>
> > (1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:
> >
> > > (A) the terms of the policy;
> > >
> > > (B) the benefits or advantages promised by the policy

9

Tex. Ins. Code § 541.051. Mid-Continent urges that claims brought under this Section should be considered pursuant to Rule 9(b)'s pleadings requirements. Plaintiffs contend that these claims need to satisfy only the more flexible Rule 8 standard.

The requirements of Rule 9(b) "apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (internal quotation marks omitted). Thus, this District has held that "[c]laims alleging violations under the Texas Insurance Code that are 'substantively identical' to fraud are subject to the Rule 9(b) pleading requirements." *Carter*, 2011 WL 2193385, at *1 (citing *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 789, 800 (N.D. Tex. 2009). Under Texas law, the elements of fraud by misrepresentation are: "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

While claims under Section 541.051 are undoubtedly similar to fraud claims, the Court is not convinced that the two are "substantively identical" in all cases. Section 541.051 does not require a mental state of knowledge or recklessness, as is required for common law fraud by misrepresentation. Thus, if a Plaintiff were to plead a violation of Section 541.051 without alleging such a mental state, it is not clear that Rule 9(b) would apply. However, Plaintiffs' Section 541.051 claims in this case are substantively identical to fraud claims, as Plaintiffs have pled that Mid-Continent's violations of the Insurance

Code were committed knowingly. (Pl. Compl. ¶ 11.05.) Thus, Rule 9(b) applies to Plaintiffs' claims of knowing misrepresentations in this case.

Plaintiffs (the "Insureds") allege that Mid-Continent (the "Insurer") violated Section 541.051 of the Insurance Code by (1) "refusing to honor Insureds' right to indemnity and defense, which Insurer has an obligation to do"; (2) "claiming that Insureds are not entitled to select independent counsel at [Mid-Continent's] expense because there is not a conflict between the rights reserved by [Mid-Continent] and issues for resolution in the Underlying Suit, which there is"; (3) "claiming that Insureds are not entitled to indemnity under the Policies because Insureds exercised their right to select independent counsel to defend them, which Insureds are"; (4) "failing to pay attorneys' fees and costs in the defense of Insureds in the Underlying Suit within 60 days of presentment, which it has an obligation to do"; (5) "representing that [Adair & Myers'] fees are unreasonable and unnecessary but rejecting [Adair & Myers'] offer to provide legal services at the same rate as [Mid-Continent's] panel counsel"; and (6) "claim[ing] that Adair & Myers cannot provide legal services commensurate with the type of services provided by panel counsel when Adair & Myers has and continues to do so." (Pl. Compl. ¶ 8.03.)

At the outset, the Court finds that the first and the fourth of these purported misrepresentations fail to state a claim for the simple reason that they are not representations at all. Section 541.051 of the Insurance Code defines a misrepresentation as "an estimate, illustration, circular, or statement." Tex. Ins. Code § 541.051. Neither Mid-Continent's alleged refusal to honor Plaintiffs' right to indemnity and defense nor its failure to pay attorneys' fees and costs can be considered a representation.

The four remaining claims also must fail, as it is clear from Plaintiffs' Complaint that they are unable to allege reliance and causation—elements of a claim brought under Chapter 541. *See Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 813 (N.D. Tex. 2010) (claims under Section 541.051 of the Texas Insurance Code for alleged misrepresentation require a plaintiff to prove that the misrepresentation caused the plaintiff's damages); *Carper v. State Farm Lloyds*, 2002 WL 31086074, at *8 (N.D. Tex. Sept. 13, 2002) (granting summary judgment for defendant on plaintiff's Insurance Code claims based on absence of evidence of reliance and causation); *Wellisch v. United Servs. Auto. Ass'n*, 75 S.W.3d 53, 59 (Tex. App. 2002, pet. denied) ("To recover damages under either the common law or the Insurance Code and DTPA, the violations must be a 'producing cause' of the insured's damages."). Plaintiffs offer no facts to support an argument that they relied on Mid-Continent's alleged misrepresentations in any way, or that the misrepresentations themselves caused Plaintiffs any harm. Plaintiffs' own allegations are that they refused to rely on Mid-Continent's statements about coverage. Indeed, Plaintiffs challenged Mid-Continent's "representations" about coverage by filing this lawsuit. While positions expressed in the alleged misrepresentations—such as Mid-Continent's contention that there is no conflict of interest, and its resulting refusal to retain Adair & Myers—may be a producing cause of Plaintiffs' injury, there is no allegation that Mid-Continent's *representations* of these positions resulted in reliance or harmed Plaintiffs in any way.[2] Plaintiffs' Complaint fails to state a claim for

---

[2] In response to the argument that they fail to allege reliance and causation, Plaintiffs point to a portion of the Complaint relating to Plaintiffs' DTPA claims, in which they do address these two elements. In Paragraph 9.05, Plaintiffs allege that they relied on representations in their insurance policies when they entered into the insurance agreements, and that they would not have entered the agreements had they known that the insurer would not fulfill its obligations to indemnify and defend them if they exercised their right to select independent counsel. (Doc. No. 95 ¶ 9.05.) Even were these allegations related to Plaintiffs' claims under the Texas Insurance Code (their placement in the DTPA section of the Complaint makes clear that

misrepresentation under Section 541.051, and Mid-Continent's motion to dismiss this claim must be granted.

### ii. Section 541.060

Plaintiffs allege that Mid-Continent violated Section 541.060 of the Insurance Code, which provides, in relevant part:

> (a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
>
> (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>
> . . .
>
> (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
>
> (4) failing within a reasonable time to:
>
> (A) affirm or deny coverage of a claim to a policyholder;
>
> . . .
>
> (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Tex. Ins. Code § 541.060. The parties agree that this claim must satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

In support of this claim, Plaintiffs re-assert the six allegations made in support of their claim under Section 541.051,[3] and contend that these six allegations demonstrate

---

they are not), the allegations do not indicate reliance on Mid-Continent's misrepresentations made in the course of this dispute. Plaintiffs' reliance on Mid-Continent's representations when Plaintiffs entered into the insurance contract provides no support for their Insurance Code claims, which allege misrepresentations made years later. Because these earlier representations are not the alleged "misrepresentations" that give rise to Plaintiffs' misrepresentation claims under Section 541.051, Plaintiffs' reliance upon them offers no support for this claim.

[3] Plaintiffs allege that Mid-Continent violated Section 541.060 by (1) "refusing to honor Insureds' right to indemnity and defense, which Insurer has an obligation to do"; (2) "claiming that Insureds are not entitled to select independent counsel at [Mid- Continent's] expense because there is not a conflict between the rights reserved by [Mid- Continent] and issues for resolution in the Underlying Suit, which there is"; (3) "claiming that Insureds are not entitled to indemnity under the Policies because Insureds exercised their right to select independent counsel to defend them, which Insureds are"; (4) "failing to pay attorneys' fees and costs in the

violations of Subsections 541.060(a)(1), (a)(3), (a)(4), and (a)(7), quoted above. Because Plaintiffs do not specify which of the six allegations supports a claim under which of the four Subsections, the Court must consider each Subsection in turn, examining whether any of the six allegations supports a claim under it.

Plaintiffs' claim under Subsection 541.060(a)(1), relating to misrepresentation, fails for the reasons discussed above with regard to Plaintiffs' misrepresentation claim under 541.051. That is, Plaintiffs' first and fourth allegations are not misrepresentations at all, and the remaining four allegations fail because Plaintiffs cannot allege reliance and causation.

Plaintiffs' claim under Subsection 541.060(a)(3) also must fail. As Mid-Continent notes, there was never a "denial of a claim or offer of a compromise settlement of a claim" in this case, as required by the Subsection. Mid-Continent never denied Plaintiffs' claim; it denied only Plaintiffs' demand to retain Adair & Myers to defend Plaintiffs. Because Mid-Continent never denied Plaintiffs' claim, it was not required to "provide to a policyholder a reasonable explanation of the basis" of a claim denial. Tex. Ins. Code § 541.060(a)(3).

As to Subsection 541.060(a)(4), Mid-Continent urges that Plaintiffs fail to allege how Mid-Continent's responses were insufficiently prompt, or what time frame would have been sufficient. The documents attached to the Complaint show that Mid-Continent sent its reservation of rights and offer of defense on January 25, 2010 (Pl. Compl., Ex. 7),

---

defense of Insureds in the Underlying Suit within 60 days of presentment, which it has an obligation to do"; (5) "representing that [Adair & Myers'] fees are unreasonable and unnecessary but rejecting [Adair & Myers'] offer to provide legal services at the same rate as [Mid-Continent's] panel counsel"; and (6) "claim[ing] that Adair & Myers cannot provide legal services commensurate with the type of services provided by panel counsel when Adair & Myers has and continues to do so." (Pl. Compl. ¶ 8.07.)

less than 30 days after Mr. Partain provided notice of the claim on December 31, 2009 (Pl. Compl. ¶ 5.03.) Because Plaintiffs do not indicate how or why this was untimely, they fail to state a claim under Subsection 541.060(a)(4).

Finally, as to Subsection 541.060(a)(7), none of Plaintiffs' six allegations asserts that Mid-Continent failed to conduct a reasonable investigation, and it is not clear what facts might provide the basis for this claim. After considering each relevant Subsection, the Court concludes that Plaintiffs fail to state a claim under Section 541.060. As to Plaintiffs' claims under Section 541.060, Mid-Continent's motion to dismiss must be granted.

### iii. Section 541.061

Plaintiffs allege that Mid-Continent violated Section 541.061, which provides, in relevant part:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
>
> > (1) making an untrue statement of material fact;
> >
> > (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
> >
> > (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
> >
> > (4) making a material misstatement of law.

Tex. Ins. Code § 541.061. In support of this claim, Plaintiffs re-assert the six allegations made in support of their claim under Sections 541.051 and 541.060, discussed above.[4]

---

[4] Plaintiffs allege that Mid-Continent violated Section 541.061 by (1) "refusing to honor Insureds' right to indemnity and defense, which Insurer has an obligation to do"; (2) "claiming that Insureds are not entitled to select independent counsel at [Mid- Continent's] expense because there is not a conflict between the rights reserved by [Mid- Continent] and issues for resolution in the Underlying Suit, which there is"; (3) "claiming that Insureds are not entitled to indemnity under the Policies because Insureds exercised their right to select independent counsel to defend them, which Insureds are"; (4) "failing to pay attorneys' fees and costs in the

Mid-Continent urges that these claims, like those under Section 541.051, should be considered under Rule 9(b). The Court agrees that Rule 9(b) applies here, but notes that Plaintiffs claims under Section 541.061 fail under even the Rule 8 standard. Like Section 541.051, Section 541.061 requires a showing of reliance and causation. *See Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 813 (N.D. Tex. 2010) (misrepresentation claims under Sections 541.051 and 541.061 of the Texas Insurance Code require a plaintiff to prove that the misrepresentation caused the plaintiff's damages). As discussed above with regard to Plaintiffs' claims under Section 541.051, Plaintiffs' fail to allege reliance or causation; thus, as to Plaintiffs' claims under Section 541.061, Mid-Continent's motion to dismiss must be granted.

### b. Claims under Chapter 542 of the Insurance Code

### i. Section 542.058

Plaintiffs allege that Mid-Continent violated Section 542.058, which provides, in relevant part:

> Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

Tex. Ins. Code § 542.058(a). It is undisputed that this claim should be considered under Rule 8 of the Federal Rules of Civil Procedure. In support of their claim, Plaintiffs

---

defense of Insureds in the Underlying Suit within 60 days of presentment, which it has an obligation to do"; (5) "representing that [Adair & Myers'] fees are unreasonable and unnecessary but rejecting [Adair & Myers'] offer to provide legal services at the same rate as [Mid-Continent's] panel counsel"; and (6) "claim[ing] that Adair & Myers cannot provide legal services commensurate with the type of services provided by panel counsel when Adair & Myers has and continues to do so."

indicate that Mid-Continent acknowledged its receipt of Adair & Myers' request for defense costs, but that it has not yet paid Adair & Myers' defense costs.

Mid-Continent argues that this claim must fail because Plaintiffs do not show that Mid-Continent denied coverage, or that its refusal to employ Adair & Myers was wrongful. The Court cannot agree. Unlike Section 541.060(a)(3) of the Texas Insurance Code, Section 542.058 does not require a plaintiff to show that a claim has been denied. Rather, Section 542.058 considers only late payment, which Plaintiffs have alleged sufficiently. Plaintiffs have, throughout their Complaint, alleged that they are entitled to select their own counsel, and that Mid-Continent has wrongfully refused to employ their selected counsel. Plaintiffs therefore have stated a claim under Section 542.058, and Mid-Continent's motion to dismiss this claim must be denied.

### ii.  Section 542.101

Plaintiffs allege that Mid-Continent violated Section 542.101, which provides, in relevant part:

> (b) On written request of a named insured under a liability insurance policy, the insurer that wrote the policy shall provide to the insured information relating to the disposition of a claim filed under the policy. The information must include:
>> (1) the name of each claimant;
>> (2) details relating to:
>>> (A) the amount paid on the claim;
>>> (B) settlement of the claim; or
>>> (C) judgment on the claim;
>> (3) details as to how the claim, settlement, or judgment is to be paid; and
>> (4) any other information required by rule of the commissioner that the commissioner considers necessary to adequately inform an insured with regard to any claim under a liability insurance policy.

Tex. Ins. Code. § 542.101. It is undisputed that Plaintiffs' claims under Section 542.101 must comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Plaintiffs assert that Mid-Continent violated Section 542.101 by failing to provide a detailed legal and factual basis for its conclusion that no conflict of interest exists in this case, and instead "merely provid[ing] conclusory statements" supporting its conclusion. (Pl. Compl. ¶ 8.13.) Mid-Continent asserts that this claim must fail because Plaintiffs allege neither a request by a named insured nor a request for information relating to the disposition of a claim.

As the Complaint acknowledges, the named insured in this case is Hallmark Design Homes, LP. As reflected in the Policy attached to the Complaint, neither Joe Partain, nor Laura Partain, nor Bill Graper is named on the Policy. Plaintiffs argue that their letter requesting information from Mid-Continent, though not sent from or signed by Hallmark Design Homes, LP, indicates that it is regarding "Insureds, Hallmark Design Homes, LP and Joe B. Partain." The Court is satisfied, for the purposes of the motion to dismiss, that Plaintiffs have alleged a request from a named insured.

Mid-Continent urges that, even if there was a request from a named insured, Plaintiffs never requested information relating to the disposition of a claim, and instead sought a response explaining Mid-Continent's position that no conflict existed. The Court agrees. The information which Mid-Continent allegedly failed to provide does not fall within any of the categories provided in the statute. It has nothing to do with the amount paid on the claim; settlement of the claim; judgment on the claim; details as to how the claim, settlement, or judgment is to be paid; or other information required by a rule of the commissioner. Because the information which Mid-Continent allegedly failed to provide

is not required by the statute, Plaintiffs fail to state a claim under Section 542.101, and

Mid-Continent's motion to dismiss must be granted.

## 2.  Alleged Violations of the DTPA

### a.  Violations of Section § 17.46(b)

Plaintiffs allege Mid-Continent violated DTPA § 17.46(b)(5), (12), and (24).

Section 17.46(b) provides, in relevant part, that it is a false, misleading, or deceptive act

or practice to:

> (5) represent[]that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;
>     . . .
> (12) represent[] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
>     . . .
> (24) fail[] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Tex. Bus. & Com. Code Ann. § 17.46(b) (West 2007).

In support of their claim, Plaintiffs allege that: (1) Mid-Continent incorrectly

claims that the insurance policies do not provide the right to indemnity and defense; (2)

Mid-Continent incorrectly states that Plaintiffs do not have a right to select their own

counsel; (3) Mid-Continent incorrectly claims that Plaintiffs are not entitled to indemnity

under the Policies by selecting independent counsel; (4) Mid-Continent has refused and

continues to refuse to pay for defense costs, including attorneys fees, which it has an

obligation to pay; (5) Mid-Continent has represented that Adair & Myers' fees are

unreasonable and unnecessary, but rejected Adair & Myers' offer to provide legal services

at the same rate as Mid-Continent's counsel; (6) Mid-Continent incorrectly claims that Adair & Myers cannot provide legal services commensurate with the type of services provided by Mid-Continent's counsel; and (7) Plaintiffs relied on representations in the policies when entering into the insurance agreements and paying their premiums, which they would not have done had they known that Mid-Continent would not recognize their rights and its obligations to indemnify and defend them if they exercised their right to select independent counsel. (Doc. No. 95 at 19-20.)

Mid-Continent urges that these claims must be considered under Rule 9(b). However, even if Plaintiffs' allegations are considered under Rule 8's more flexible pleading standards, they do not support a claim under Section 17.46. The first two Subsections, 17.46(b)(5) and 17.46(b)(12), relate to misrepresentation. These claims fail because Plaintiffs do not allege that Mid-Continent ever represented that the policies had characteristics or involved rights which they do not have or involve. Rather, Plaintiffs' position in this case is that the policies *do* have characteristics and involve rights which Mid-Continent is failing to recognize appropriately. Even if Plaintiffs are ultimately correct that Mid-Continent is failing to recognize their rights under the policies, such a failure is properly characterized as a breach of contract, not a misrepresentation.

The third Subsection, 17.46(b)(24), is similarly unsupported by Plaintiffs' allegations. Plaintiffs do not allege any failure by Mid-Continent to disclose information known at the time that the parties transacted. Rather, Plaintiffs allege simply that they relied upon "representations in the policies when entering into the insurance agreements and paying their premiums." (Pl. Compl. ¶ 9.05.) Plaintiffs do not claim that these relied-upon representations were *misrepresentations*, but rather that Mid-Continent is violating

the policies failing to fulfill its obligations to indemnify and defend the Plaintiffs. Again, this gives rise to a claim for breach of contract, but cannot state a claim under the DTPA. Because Plaintiffs do not state a claim under Section 17.46, Mid-Continent's motion to dismiss this claim must be granted.

### b.  Breach of Section 17.50

Section 17.50 gives rise to a cause of action based on "the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code." Tex. Bus. & Com. Code § 17.50(a)(4) (West 2005). Plaintiffs allege that Mid-Continent breached Section 17.50 through the employment of Rod Evans and James Quattrini as representatives of the claims department, and Tim Poteet as counsel in this case, because each individual authored letters that violated Chapter 541 of the Insurance Code.

Plaintiffs misunderstand Section 17.50 and its use of the term "employment." Section 17.50 is not, as Plaintiffs allege, breached by the use or employment *of* particular persons; rather, it gives rise to a cause of action based on "the use or employment *by* any person *of* an act or practice in violation of Chapter 541, Insurance Code." Tex. Bus. & Com. Code § 17.50(a)(4) (West 2005) (emphasis added). The term "employment," when read in the context of the statute, means "use." Thus, Mid-Continent has not violated Section 17.50 by employing Mr. Evans, Mr. Quattrini, or Mr. Poteet.

Beyond Plaintiffs' misunderstanding of the statute, their claim ultimately must fail because they fail to allege the employment of an act in violation of Chapter 541 of the Insurance Code. As discussed above, Plaintiffs have not adequately pled a violation of that Chapter; thus, this claim, which is predicated alleging a violation of Chapter 541, must be dismissed.

21

### 3. Enhanced damages for knowing violations

Plaintiffs allege a right to enhanced damages for Mid-Continent's alleged "knowing" violations of Section 541.152 of the Insurance Code and Section 17.50 of the DTPA. As the Court has dismissed Plaintiffs' claims under those Sections, this request is now moot.

### 4. Declaratory judgment

Finally, Mid-Continent reminds the Court that it has broad discretion to grant or refuse declaratory judgment. *See, e.g.*, *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). Mid-Continent argues that, because Plaintiffs' other claims should be dismissed for failure to state a claim, their declaratory judgment action, which relies upon facts in the underlying claims, should be dismissed as well. Because some of Plaintiffs' claims have not been dismissed, Defendant's argument is inapposite. The Court exercises its discretion to consider Plaintiffs' declaratory judgment request, and does so in the context of the cross-motions for summary judgment, below.

## III.   CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.  Legal Standard

#### 1.  Summary Judgment

To grant summary judgment, the Court must find that the pleadings and evidence show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party

must then go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (footnote omitted) (internal quotation marks omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* at 1076 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Servs., LLC*, 341 F. App'x 26, 28 (5th Cir. 2009) (citation omitted). The Court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075.

### 2.  Insurance Disputes

A federal court sitting in diversity in Texas applies Texas law in the interpretation of insurance policies. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). Federal courts in Texas are bound to apply the law as interpreted by the Texas Supreme Court. *Id.* (citing *Barfield v. Madison County, Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000)). If the Texas Supreme Court has not definitively ruled on the issue, courts must predict how that court would decide the issue. *Id.* (citing *Barfield*, 212 F.3d at 272; *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 353-54 (5th Cir. 1998)). Intermediate state courts of appeals' decisions can be persuasive, but are not controlling.

*Id.* (citing *Barfield*, 212 F.3d at 272; *Matheny*, 152 F.3d at 354). Ultimately, the Court "must not 'expand state law beyond its presently existing boundaries.'" *Id.* (citing *Barfield*, 212 F.3d at 272).

### B.   Analysis

Plaintiffs move for partial summary judgment on their claims for breach of contract and violations of Sections 541.051-.061 of the Texas Insurance Code (Doc. No. 100 at 2.) (The Court has already dismissed these Insurance Code claims, as discussed above.) Mid-Continent moves for summary judgment asking the Court to declare that (1) Texas law does not permit Plaintiffs to select counsel to defend the claims in the underlying lawsuit; (2) Plaintiffs' refusal to accept defense counsel that Mid-Continent has chosen and assigned constitutes breach of contract; (3) Plaintiffs are not entitled to policy benefits due to their repudiation and breach of contract; (4) Plaintiffs have failed to comply with conditions precedent to coverage, including a defense, under the policies, such that Mid-Continent has no duty to defend Plaintiffs in the KFA Lawsuit; (5) Plaintiffs are not entitled to relief on any of their claims, including claims for breach of contract and violations of the Texas Insurance Code and the DTPA; and (6) Plaintiffs have no right to recover attorneys' fees.

Plaintiffs base their breach of contract claim and their remaining statutory claim on the following premise: Mid-Continent had a duty to defend Plaintiffs in the Underlying Suit. While this duty to defend would typically be satisfied by the insurer selecting counsel to represent the insured, the facts of this case gave rise to a conflict of interest, warranting selection of independent counsel by Plaintiffs. Because Plaintiffs had the right to select counsel, and because Mid-Continent has refused to pay their selected counsel,

Mid-Continent has breached the insurance contract and violated Section 542.058 of the Insurance Code.

Mid-Continent contends that it fulfilled its duty to defend when it offered a defense, subject to a reservation of rights, to be provided by Cooper & Scully. Mid-Continent further urges that Plaintiffs breached the insurance contract and failed to comply with conditions precedent to coverage, both of which Mid-Continent indicates eliminate Plaintiffs' right to a defense going forward. The Court considers the parties' positions below.

### 1. Duty to Defend and Plaintiffs' Right to Select Defense Counsel

Plaintiffs' success on their remaining claims requires the Court to find that Mid-Continent had a duty to defend, and that it violated this duty by denying Plaintiffs' request to select defense counsel.

### a.   Duty to defend

Plaintiffs allege that Mid-Continent has a contractual obligation to defend them in the Underlying Suit. In Texas, whether an insurer has the duty to defend the insured is determined as a matter of law. *Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628 (S.D. Tex. 2010). In determining a carrier's duty to defend under an insurance contract, courts must limit their review "to the 'four corners' of the insurance policy and the 'four corners' of the allegations in the underlying complaint. *Downhole Navigator, L.L.C. v. Nautilus Ins. Co.*, 2011 WL 4889125, at *6 (S.D. Tex. May 9, 2011) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. Merch. Fast Motor Lines, Inc.*, 939 S.W.3d 139, 140 (Tex. 1997)). This requirement, known as the "Eight Corners Rule," applies in this case. In order for the duty to defend to arise, "the 'four corners' of the

25

complaint must allege facts that could possibly assert a claim within the scope of coverage in the 'four corners' of the insurance policy." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 745 (5th Cir. 2011).

Any "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Century Sur. Co. v. Hardscape Const. Specialties, Inc.*, 578 F.3d 262, 269 (5th Cir. 1999) (quoting *Merch. Fast Motor Lines, Inc.*, 939 S.W.3d at 141). Indeed, "[i]f *any* allegation in the complaint is even *potentially* covered by the policy, then the insurer has a duty to defend its insured." *Evanston*, 645 F.3d at 745 (quoting *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004).

The Court thinks it clear that Mid-Continent has a duty to defend Plaintiffs in the Underlying Suit. First, the Court looks to the four corners of KFA's Second Amended Complaint, wherein KFA alleges, among other things, that Plaintiffs "published and used . . . infringing materials in the course of advertising their infringing structures." (Doc. No. 95, Ex. 4 ¶ 18.) The Court then looks to the four corners of the insurance policy, and notes that "personal and advertising injury" is covered by the policy. (*See, e.g.*, Doc. No. 101, Ex. 1, "Mid-Continent Policy No. 04-GL-000717323, effective May 28, 2008 to January 20, 2009, at 17-26.) Even if KFA made no other potentially covered allegations, the allegation of advertising injury would be enough to trigger Mid-Continent's duty to defend. Mid-Continent has wasted no time disputing that such a duty to defend exists; rather, it asserts that it fulfilled this duty by offering a defense provided by its selected counsel, and that it had no obligation to pay counsel chosen by Plaintiffs.

### b.  Right to select defense counsel

The Texas Supreme Court has affirmed that liability insurance policies like the one at issue in this case confer on an insurer the right to control the defense of claims against the insured. *Unauthorized Practice of Law Comm. v. Am. Home Assur. Co. ("UPLC")*, 261 S.W.3d 24, 26 (Tex. 2008). The insurer's right of control generally includes the authority to make defense decisions as if it were the client. *Id.* at 42. As a result, an insurer's authority typically includes "the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case." *N. Country Mut. Ins. Co. v Davalos*, 140 S.W.3d 685, 688 (Tex. 2004) (citing *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1988)); *Darwin Select Ins. Co. v. Laminack, Pirtle & Martines, L.L.P.*, 2011 WL 2174970, *3 (S.D. Tex. 2011) ("[Insurer] has the right to appoint defense counsel, to determine reasonable claims expenses, to control settlement, and to determine whether the matter is litigated or arbitrated.").

The insurer's right to appoint defense counsel gives way when a disqualifying conflict of interest exists. *Davalos*, 140 S.W.3d at 688. Where such a conflict exists, insureds may select their own, independent counsel, thereby protecting them from "an insurer-hired attorney who may be tempted to develop facts or legal strategy that could ultimately support the insurer's position that the underlying lawsuit fits within a policy exclusion." *Rx.com v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 564, 559-60 (S.D. Tex. 2006); *Hous. Auth. of the City of Dallas, Tex. v. Northland Ins. Co.*, 333 F. Supp. 2d 595, 601 (N.D. Tex. 2004). Of course, "[e]very disagreement about how the defense should be conducted cannot amount" to a disqualifying conflict of interest. *Davalos*, 140 S.W.3d at

689. For this reason, reservation of rights letters do not "necessarily create a conflict between the insured and the insurer." *UPLC*, 261 S.W.3d at 40. Rather, a reservation of rights letter "only recognizes the possibility that such a conflict may arise in the future." *Id*.

A disqualifying conflict of interest exists where "the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends." *Davalos*, 140 S.W.3d at 689. The Texas Supreme Court has not offered further clarity on what is meant by *Davalos'* "same facts" requirement, or how the requirement is to be applied. In contesting whether the Underling Suit will adjudicate the "same facts" upon which coverage depends, the parties express different understandings of what this "same facts" requirement means. Thus, the Court is tasked with interpreting the term and determining whether any fact upon which coverage depends also will be adjudicated in the Underlying Suit. The Court notes, for the purpose of making this determination, that the term "adjudicate" is defined by Black's Law Dictionary as "to rule upon judicially." Black's Law Dictionary (9th ed. 2009). In order for a disqualifying interest to exist, then, it must be apparent that facts upon which coverage depends will be ruled upon judicially in the Underlying Suit. *Davalos* also distinguishes between a "disqualifying" conflict of interest, and one that is merely "potential." 140 S.W.3d at 689. It is not until "the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends" that a potential conflict becomes a disqualifying one, entitling an insured to select independent counsel. *Id.*[5]

---

[5] The Court notes that many states do not impose so high a burden on insureds seeking to select independent counsel. *See, e.g.*, *Union Ins. Co. v. Knife Co., Inc.*, 902 F. Supp. 877, 880 (W.D. Ark. 1995) (finding that a conflict of interest arises when an insurance contract provides coverage for some, but not all, of the claims asserted against the insured); *Golotrade Shipping and Chartering, Inc. v. Travelers Indem. Co.*, 706 F.

The Underlying Suit is a copyright infringement case brought under the Federal Copyright Act (the "Act"). To succeed on a claim of copyright infringement, a claimant must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'g, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The first element, copyright ownership, is shown by proof of originality and copyrightability, and compliance with the applicable statutory requirements. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408 (5th Cir. 2004). To establish the second element, actionable copying, a plaintiff must prove factual copying and substantial similarity. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). Mid-Continent contends that no facts upon which coverage depends will be adjudicated in the resolution of these two elements in the Underlying Suit.

Plaintiffs assert that five of the issues presented in Mid-Continent's reservation of rights—facts upon which coverage clearly depends—will be adjudicated in the Underlying Suit. As to these issues, Plaintiffs argue that counsel selected by the insurer could develop facts or pursue a strategy that would ultimately support Mid-Continent's position that the underlying lawsuit fits within a policy exclusion described in the reservation of rights. These issues include: (1) whether the alleged copyright infringement includes "advertising injury," which is covered by the insurance policy; (2) whether the alleged infringement occurred within the policy period; (3) whether the alleged infringement was willful, leaving it outside of the policy's coverage; (4) whether a party

---

Supp. 214, 219 (S.D.N.Y. 1989) (under well-established New York law, "when the insurer and the insured have a *potential* conflict of interest, the duty to defend includes a duty to provide independent defense counsel to the insured.") (emphasis added). However, this Court is not tasked with considering the prudence of the standard developed by the Texas Supreme Court, nor is it productive for this Court to expound upon the complications inherent in drawing a line between "potential" and "actual" conflicts of interest.

covered under the policy is responsible for the alleged infringement; and (5) whether Plaintiffs tendered notice of their claim to Mid-Continent so late as to prejudice Mid-Continent's ability to defend the Underlying Suit.

### i. Whether the Underlying Suit will adjudicate the facts regarding "personal and advertising injury" on which coverage depends

In its reservation of rights, Mid-Continent informs Plaintiffs that it reserves the right to decline coverage for copyright damages, except those damages considered "personal and advertising injury." (Pl. Compl., Ex. 7.) Because Mid-Continent's policies exclude coverage for all copyright infringement not occurring in an advertisement, a critical issue in any coverage dispute would be whether the alleged infringement was in an advertisement.

In the Underlying Suit, KFA's Second Amended Complaint refers repeatedly to "infringing advertising activities" by the Plaintiffs, and alleges that Plaintiffs "published and used . . . infringing materials in the course of advertising their infringing structures." (Doc. No. 95, Ex. 4 ¶ 18.) According to Plaintiffs, these allegations indicate that the question of whether Plaintiffs infringed upon KFA's copyright in the course of advertising is both a fact to be determined in the Underlying Suit, and one upon which insurance coverage depends.

Mid-Continent argues that *Davalos'* "same facts" requirement is not met, because the classification of the injury as advertising or non-advertising will not be adjudicated in the Underlying Suit. Mid-Continent proposes that the requirement that the same facts be "adjudicated" in the Underlying Suit and the coverage dispute requires more than that the same facts be alleged or the subject of testimony. A disqualifying conflict does not arise,

Mid-Continent argues, unless facts upon which coverage depends are actually ruled on by the fact finder in the Underlying Suit.

Applying *Davalos*, the Court agrees with Mid-Continent that, as to this issue, the facts upon which coverage depends will not be adjudicated, or ruled upon judicially, in the Underlying Suit. While the jury in the Underlying Suit will determine whether incidents of infringement—some of which allegedly were committed in advertising—took place, it appears that the jury will have no opportunity to determine specifically that infringement took place in advertising. KFA's proposed jury question dealing with infringement, asks, "Do you find by a preponderance of the evidence that Hallmark Design Homes, L.P. infringed the copyrights of Kipp Flores Architects, L.L.C?" (Doc. No. 75, Ex. 1 at 19.) If this is the only question the jury is asked with regard to infringement, the trier of fact will never adjudicate whether infringement occurred in Plaintiffs' advertisement. Thus, the Court finds that the advertising/non-advertising injury issue does not give rise to a disqualifying conflict of interest.

### ii. Whether the alleged infringement occurred within the policy period

Mid-Continent's reservation of rights asserts that Mid-Continent will pay only for damages which result from an offense "within the effective dates of the policy." (Doc. No. 95, Ex. 7.) Plaintiffs assert that there is a conflict of interest with regard to when the injury alleged in the Underlying Suit occurred, and that lawyers selected by Mid-Continent will have the opportunity to direct litigation towards the conclusion that it occurred outside of the policy period.

Plaintiffs entered into a contract with KFA on January 6, 2004. (Doc. No. 101, Ex. A.) Plaintiffs' insurance policies with Mid-Continent did not come into effect until May

28, 2004. Plaintiffs indicate that there may have been instances of copyright infringement that occurred prior to the coverage period, and that the Underlying Suit will resolve when the alleged copyright infringement took place. Although the date of infringement normally would not be an issue in a copyright suit, Plaintiffs contend that it will be adjudicated in the KFA Suit, as Plaintiffs have asserted a statute of limitations defense that will require the determination of such dates. Plaintiffs' statute of limitations defense in the Underlying Suit asserts that some of the instances of copyright infringement alleged by KFA occurred outside of the three year statute of limitations applicable to copyright claims. *See* 17 U.S.C. § 507(b) (a civil action for copyright infringement must be commenced "within three years after the claim has accrued"). Plaintiffs contend that, when the court presiding over the Underlying Suit determines dates of infringement for statute of limitations purposes, it also will be determining facts upon which coverage depends.

Plaintiffs' argument fails to recognize that, in considering when the statute of limitations begins to run in an infringement case, the court will look to when KFA's infringement claim *accrued*, which is not necessarily the same thing as when the infringement was committed. Courts determining accrual can look either to the date of infringement or to the date on which a plaintiff discovered the infringement (the "date of discovery"). *Compare Makedwde Publ'g Co. v. Johnson*, 37 F.3d 180, 182 (5th Cir. 1994) (a defendant "is only liable for his acts of infringement *committed* within three years prior to [p]laintiff's lawsuit") (emphasis added), *and Jordan v. Sony BMG Music Entm't Inc.*, 354 F. App'x 942, 945 (5th Cir. 2009) (a copyright claim accrues when a party "knew or had reason to know of the injury upon which the claim is based"); *see also Computer*

*Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 454, 455–56 (Tex. 1996) (where an injury is "inherently undiscoverable and the evidence of the injury is objectively verifiable," the statute of limitations may begin to run only upon discovery of the injury).

Regardless of whether the court in the Underlying Suit looks to the date of infringement or the date of discovery, it is clear that the facts upon which coverage depends will not be adjudicated in the Underlying Suit. If the court looks to the date of infringement, any alleged acts of infringement during the pre-coverage period will be time-barred as outside of the three year statute of limitations; those alleged acts therefore will not give rise to liability (or a coverage dispute). If, instead, the court looks to the date of discovery, it will not consider when acts of infringement actually *occurred*, which is the only relevant question for coverage purposes. Thus, no matter how the court in the Underlying Suit resolves Plaintiffs' statute of limitations defense, it will not adjudicate the same facts upon which coverage depends, so this issue does not give rise to a disqualifying conflict of interest.

### iii. Whether the alleged infringement was willful, leaving it outside of the policy's coverage

Mid-Continent's reservation of rights disclaims liability for "knowing violation of rights of another." (Doc. No. 95, Ex. 8.) Thus, whether Plaintiffs acted knowingly is a fact on which coverage will turn. Plaintiffs assert that there is a conflict of interest with regard to whether their alleged copyright infringement was committed knowingly. They argue that, because KFA has pleaded for statutory damages under the Copyright Act, and because statutory damages can be increased with a finding of willfulness, the trier of fact in the Underlying Suit will consider whether Plaintiffs' alleged infringement was willful.

The Court finds this conflict to be hypothetical and potential at best. Contrary to the implications in Plaintiffs' argument, KFA does not actually allege willful infringement. While KFA does request statutory damages as an alternative to actual damages, the statute under which KFA requests statutory damages, 17 U.S.C. § 504(c), provides for the recovery of statutory damages in two scenarios: 17 U.S.C. § 504(c)(1) indicates that Plaintiffs may "elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages…not less than $750 or more than $30,000." The following Subsection, 17 U.S.C. § 504(c)(2), provides that, where a court finds that infringement was committed willfully, the court may "increase the award of statutory damages to a sum of not more than $150,000." That 17 U.S.C. § 504(c) gives courts the discretion to increase a statutory damages award with a finding of willful infringement does not mean that KFA's request for statutory damages, which makes no mention of willful infringement, will lead to the adjudication of willfulness. As the conflict at this stage is entirely hypothetical and potential, rather than actual, it cannot be considered a disqualifying conflict of interest. *Navigators Specialty Ins.*, 2011 WL 5870066, at *1 n.3.[6]

### iv. Whether a party covered by the policy is responsible for the alleged infringement[7]

In its reservation of rights, Mid-Continent indicates that it has no defense obligations to parties not named as Insureds under the policy. (Pl. Compl., Ex. 7 at 5.) Mid-Continent further notes that Mr. Partain "is not specifically designated" as an

---

[6] Mid-Continent also argues that "willfulness" includes both knowledge *and* recklessness, and that a finding of willfulness in the underlying case would therefore not be dispositive on the relevant coverage question— whether Plaintiffs possessed actual knowledge. Because the Court concludes that KFA has not alleged willfulness, it does not address this argument.

[7] The Court expresses no opinion as to whether Plaintiffs are "insureds" under the insurance policies, as the resolution of this question is unnecessary for the purposes of this Memorandum and Order.

Insured, and that it reserves its rights "to decline any coverage obligations to Joe B. Partain should it be determined that Joe B. Partain's involvement is not found to be" that of an Insured. (*Id.* at 6.) It is unclear whether Mid-Continent's reservation of rights on this particular issue also extends to Ms. Partain and Mr. Graper.

According to the insurance policies, whether any person is an Insured, and thus covered under the policies, depends upon whether he or she is a member, a partner, or the spouse of a partner in a partnership or joint venture, or whether he or she is a member or manager in a limited liability company. (*Id.* at 5.) Plaintiffs argue that facts which would determine this coverage question will be adjudicated in the Underlying Suit. Specifically, because joint and several liability is alleged in the Underlying Suit, Plaintiffs contend that facts regarding the their individual liability—facts related to their role in Hallmark, their corporate positions, their title, and their business activities—will be adjudicated. While the trier of fact in the Underlying Suit will certainly hear testimony regarding these facts, Plaintiffs have failed to persuade the Court that a jury in the Underlying Suit, in determining joint and several liability, would adjudicate any fact on which coverage depends.

Mid-Continent again points to KFA's proposed jury questions on the issue, which ask, "Do you find by a preponderance of the evidence that [Joe B. Partain, Laura Partain, or William Graper] is vicariously liable for the acts of infringement of Hallmark Design Homes, L.P.?" (Doc. No. 74, Ex. 1 at 20.) Plaintiffs have not asserted that, in answering this question, the jury would be required to find that the Plaintiffs were members, partners, or spouses of a partner in a partnership or joint venture, or that they were

members or managers in a limited liability company. If such were the case, a disqualifying conflict of interest likely would arise.

To be clear, the Court does not believe that a disqualifying conflict is present only where the jury explicitly states the conflicting factual conclusion in its verdict form. That is, the jury in this case would not have to write, on its verdict form, "Mr. Partain is a member, a partner, or the spouse of a partner in a partnership or joint venture," in order for a disqualifying conflict to exist. As long as the trier of fact's verdict makes clear that it also determined a fact upon which coverage depends, a disqualifying conflict exists.

As the Plaintiffs have failed to argue that a finding of joint and several liability would require the jury to make a determination of facts upon which coverage depends, the Court concludes that the joint and several liability determination does not give rise to a disqualifying conflict of interest.

> **v.  Whether Plaintiffs tendered notice of their claim to Mid-Continent so late as to prejudice Mid-Continent's ability to defend the Underlying Suit**

In its reservation of rights, Mid-Continent "reserves the right to decline coverage . . . should it later be determined that [the] late reporting of this claim and subsequent lawsuit has compromised" Mid-Continent's ability to defend against the claim. (Pl. Compl., Ex. 7 at 5.) Under Texas law, when such an issue is adjudicated in a coverage dispute, the burden is on the insurer to show prejudice from an insured's failure to cooperate or provide timely notice of a covered occurrence. *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 467 (Tex. App.–Dallas 1991, no pet.). Plaintiffs argue that a bad result in the Underlying Suit could be blamed on the late tender of the claim to the Insurer. They assert that, because the facts to be developed and presented in the

Underlying Suit will determine whether they obtain a favorable result, these facts will also determine whether Mid-Continent was prejudiced by the late tender of their claim.

Plaintiffs' argument here is essentially that Mid-Continent's lawyers would have an incentive to throw the entire case so that they could later argue that Plaintiffs' late tender of the claim prevented them from providing an effective defense. There is no support for the conclusion that counsel would take such a risk, and there are no matching "facts" to be adjudicated in both the Underlying Suit and the coverage dispute on this issue. As expressed above, that some of the same facts might be "developed and presented" in the Underlying Suit is irrelevant, as *Davalos* requires the same facts to be actually adjudicated. Thus, the Court concludes that the "late notice" issue does not give rise to a disqualifying conflict of interest.

### 2.  Plaintiffs' Breach of Contract Claim

Plaintiffs move for summary judgment on their breach of contract claim, and Mid-Continent moves for a declaration that the Plaintiffs are not entitled to relief on this claim. Plaintiffs urge that Mid-Continent breached the insurance contract, because a carrier's refusal to pay for an insured's independent counsel in the underlying litigation breaches the insuring agreement. In order to find for Plaintiffs on this claim, the Court would have to find that Mid-Continent's refusal to allow Plaintiffs to select counsel breached its duty to defend. For the reasons discussed above, the Court reaches the opposite conclusion. Because no disqualifying conflict of interest exists, Mid-Continent is entitled to select counsel to defend Plaintiffs, and did not breach the insurance contract by offering to do so.

### 3.  Insurance Code and DTPA Claims

Mid-Continent seeks a declaration that Plaintiffs are not entitled to relief on any of their claims, including their claims under the Insurance Code and the DTPA. The Court has dismissed all but one of these claims. Remaining is Plaintiffs' claim under Sections 542.058 of the Texas Insurance Code.

Section 542.058 does not give rise to liability until an insurer delays payment of a claim after the insured has provided "all items, statements, and forms reasonably requested and required" by the insurer. Tex. Ins. Code. § 542.058(a). Here, the evidence establishes that Mid-Continent did not receive all such material. For example, Plaintiffs, acting through Adair & Myers, refused to provide Mid-Continent with information "regarding facts, damages and defenses (leverage)"—information which Mid-Continent reasonably requested in its efforts to make a coverage decision. (Doc. No. 101, Ex. 16 at 2.) Mid-Continent's request for information indicates, "Our objective is to obtain information about this claim as we do in all cases that are tendered to us where we have accepted coverage regardless of whether a Reservation of Rights has been issued or not." (*Id.*) Adair & Myers responded, "We are denying this request and moving forward with a declaratory judgment action against Mid-Continent on behalf of the insured." (Doc. No. 101, Ex. 17.) Because Plaintiffs refused to provide information reasonably requested and required by Mid-Continent, they cannot recover under Section 542.058, and Mid-Continent is entitled to summary judgment on this claim.

### 4. Attorneys' Fees

Plaintiffs seek attorneys' fees, and Mid-Continent seeks a declaration that Plaintiffs have no right to recover attorneys' fees. Under Texas law, attorneys' fees and costs the insured incurs in the underlying litigation "are damages produced by the

insurer's breach of its duty to defend." *Evanston*, 645 F.3d at 750. Because Mid-Continent has not breached its duty to defend, Plaintiffs are not entitled to attorneys' fees.

### 5.  Mid-Continent's Remaining Duty

Finally, Mid-Continent urges that Plaintiffs breached the insurance contract and failed to cooperate with conditions precedent to coverage, and that, as a result, they are no longer entitled to policy benefits, including Mid-Continent's duty to defend. (Doc. No. 101 at 14.) Mid-Continent's brief argument on this point states only that Plaintiffs "are not entitled to select counsel, and their refusal to permit Mid-Continent to assume the defense, subject to its reservation of rights, and to provide important requested information, constitutes material breach of the insuring agreement, including failure to cooperate in the defense. Their untimely notice of claim and suit also constitutes failure to comply with conditions precedent for coverage that prejudiced Mid-Continent." (Doc. No. 101 at 12.) The Court understands Mid-Continent to be asserting that, in addition to not having to pay Adair & Myers, Mid-Continent no longer has the duty to defend Plaintiffs at all. For as important a point as this, the Court finds Mid-Continent's argument wanting.

Plaintiffs' response is similarly unhelpful. Plaintiffs respond only that, because they were entitled to select independent counsel, they neither breached the contract nor failed to cooperate with a condition precedent to coverage. (Doc. No. 113 at 20.) Apparently, Plaintiffs did not anticipate that the Court might rule against them as to their right to independent counsel, as they offer no argument addressing whether such a ruling vitiates their right to Mid-Continent's defense altogether. In *Davalos*, the Texas Supreme Court held that if an insured "reject[s] the insurer's defense without a sufficient conflict, [it loses its] right to recover the costs of that defense," and the insurer does not breach its

duty to defend. *Davalos*, 140 S.W.3d at 690. While the *Davalos* holding may apply in this case, the Court is hesitant to grant summary judgment on an issue that produced such scant briefing from both parties.[8] Ultimately, the Court is uncomfortable with concluding, absent further briefing, that Plaintiffs' good faith (if incorrect) assertions of a disqualifying conflict of interest result in their permanent deprivation of their right to a defense under the contract. Such an outcome imparts a serious penalty on Plaintiffs, and undoubtedly would deter insureds with legitimate concerns regarding disqualifying conflicts from pursuing their right to independent counsel. In light of these concerns, the Court asks the parties to submit, by January 31, supplementary briefing addressing whether Plaintiffs have lost their right to a defense by Mid-Continent.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds that Defendant's Motion to Dismiss must be **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion for Summary Judgment must be **GRANTED IN PART**. The Court requests further briefing regarding Defendant's remaining duty to defend.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 20th day of January, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[8] The Court notes that both parties offered further briefing on this issue in early 2011. As those briefs have been superseded by later briefing, however, they are now moot, and Court does not consider the arguments made therein.